**Cletis S. SMITH and Alma M. Smith, Appellees,**

**v.**

**VILLAGE ENTERPRISES, INC., and Malt Village Franchising, Inc., Appellants.**

No. 55393.

Supreme Court of Iowa.

May 23, 1973.

C. A. Frerichs, Waterloo, for appellants.

Samuel T. Beatty, Waterloo, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

LeGRAND, Justice.

The question presented is whether a judgment obtained by plaintiffs against Malt Village Franchising, Inc. may be enforced against property once owned by that corporation but subsequently transferred to Village Enterprises, Inc. The trial court found an equitable lien in favor of plaintiffs and held the property attached by them to be subject to payment of the judgment. We affirm.

This appeal involves only Village Enterprises, Inc., (hereafter called Village Enterprises). Plaintiffs were denied relief against Malt Village Franchising, Inc., (hereafter called Malt Village) and no appeal was taken from that portion of the decree.

In 1966, plaintiffs entered into a food service franchise and purchase agreement with Malt Village. The corporation later became insolvent and defaulted on this agreement. Plaintiffs thereafter obtained judgment against it in the amount of $6,894.36 plus interest for breach of contract. It is this judgment which plaintiffs seek to satisfy from the assets transferred by Malt Village to Village Enterprises.

One of these assets was an unliquidated claim upon which Village Enterprises subsequently obtained a $15,000.00 judgment. Plaintiffs have attached that judgment to insure payment of their own judgment against Malt Village. This appeal challenges their right to do so.

At the risk of being repetitious, we summarize the problem facing plaintiffs. Their judgment is against Malt Village. The property they have attached is owned by Village Enterprises under a transfer by which it took over all of Malt Village's as-

sets. In order to prevail, plaintiffs must somehow escape the general rule that assets conveyed by one corporation to another pass free from the debts of the transferor. 15 Fletcher Cyclopedia Corporations, section 7122, (Perm.Ed., 1961 Rev.Vol.); 19 Am.Jur.2d, Corporations, section 1546 (1965); Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 825, 221 N.W. 194, 196 (1928); Annot., 149 ALR 788 (1944).

They seek to do so by asserting an equitable lien on the transferred property. The trial court found for plaintiffs on this theory, ordering the attached property applied to payment of plaintiffs' judgment. We discuss the equitable lien doctrine in Division II.

Village Enterprises assails the trial court's conclusion on two grounds, one procedural and one substantive. It contends there was error as follows:

1. In allowing plantiffs to amend their petition to conform to the proof 16 days after the evidence had been completed.

2. In holding plaintiffs were entitled to an equitable lien on property transferred from Malt Village to Village Enterprises.

I. We consider first the propriety of the trial court's ruling allowing plaintiffs to amend their petition 16 days after submission of the case by adding Count IV in which they claimed an equitable lien. Plaintiffs had originally pled in two counts. Later they amended to add a third one. Count I (alleging the property was still owned by Malt Village) was dismissed on motion. Count II (claiming the assignment had been made to "hinder, delay and defraud creditors") and Count III (based on fraud and undue influence) were dismissed after trial for failure of proof.

Under these circumstances the importance of allowing the tardy amendment is apparent. It afforded the only basis for the trial court's decree. Obviously plaintiffs could not have succeeded if the amendment had been rejected, since the other theories asserted by plaintiffs were rejected by the trial court.

In considering this matter we start with the principle that trial courts have broad discretion in allowing late amendments under Rule 88, Rules of Civil Procedure, which provides in part as follows:

"* * * The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

This rule has always received liberal interpretation. Rule 88 contemplates amendments to conform to the proof at any time before final disposition. This includes the right to amend after conclusion of the evidence. Twin Bridges Truck City, Inc. v. Halling, 205 N.W.2d 736, (Iowa 1973) (allowing an amendment to conform to the proof eight days after trial); Hackney v. Tower, 260 Iowa 1101, 1107, 152 N.W.2d 257, 261 (1967) (permitting an amendment seven days after trial). See also W & W Livestock Enterprises, Inc. v. Dennler, 179 N.W.2d 484, 488 (Iowa 1970); Stauter v. Walnut Grove Products, 188 N.W.2d 305, 307, 308 (Iowa 1971).

These cases demonstrate the *time* of the amendment is not the determining factor. More important is whether it substantially changes the issues. If so, the amendment should not be allowed. Rule 88, R.C.P.; W & W Livestock Enterprises, Inc. v. Dennler, supra, 179 N.W.2d at 488.

The trial court specifically found that Count IV (the post-trial amendment) was substantially the same as Count II of the original petition except that Count II asked personal judgment while Count IV sought only to have a lien established. Otherwise, the theory of recovery in Count II (that the transfer of assets was made

without adequate consideration and was "for the purpose of hindering, delaying and defrauding the plaintiffs who are creditors of said Malt Village Franchising, Inc.") does not vary materially from the facts relied on to prove plaintiffs' right to an equitable lien in Count IV. It too alleges the transfer was made without adequate consideration and that it left Malt Village without assets to pay its creditors —not unlike the assertion the assignment was made to hinder, delay, and defraud creditors. We cannot say the trial court abused its discretion in ruling the amendment did not substantially alter the issues already pled.

■ Village Enterprises also argues it was prejudiced by the late amendment because it was prevented from introducing available evidence which would have defeated plaintiff's claim. The defendant states such evidence was not produced because it was irrelevant until the amendment was allowed. Then there was no opportunity to use it.

The trouble with this argument is that Village Enterprises did not ask permission to reopen in order to introduce what is now claimed to be vital evidence, although it had ample opportunity to do so. The evidence was concluded May 25, 1971. The amendment to conform to the proof was filed June 11, 1971. Resistance to this amendment was filed June 15, 1971, and the court's findings, conclusions and judgment were entered on June 23, 1971.

Rule 88 allows the court to impose conditions upon the filing of an amendment after issue has been joined. Certainly the trial court, if requested, could have given Village Enterprises the right to reopen as a condition to allowing the amendment. Conceivably failure to do so would have been an abuse of discretion if prejudice resulted. In the absence of such a request, we hold the claim of prejudice is without merit.

Allowing plaintiffs to amend by adding Count IV to their petition was not an abuse of discretion under the circumstances here.

II. We turn now to a consideration of the second complaint, which assets plaintiffs are not entitled to an equitable lien on the property in question.

Although equitable liens are generally recognized, the doctrine is one of obscure definition. It has been said it is "difficult to give an accurate and comprehensive definition of the term equitable lien and, * * * it frequently has been stated such a lien is a right not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt or class of debts." 51 Am.Jur.2d, Liens, Section 22, page 160 (1970). See also Black's Law Dictionary 633 (Rev. 4th Ed.1968) and 53 C.J.S. Liens § 4, page 836 (1948).

This definition is adopted in simplified form in Theater Realty Co. v. Aronberg-Fried Co., Inc., 8 Cir. 1936, 85 F.2d 383, 388, where the court succinctly stated an equitable lien is "the right to have property subjected in a court of equity to the payment of a claim."

The difficulty arises in attempting to determine the many varying factual situations under which the right exists. Be that as it may, our present task is made less onerous because we have already held an equitable lien may be imposed under circumstances alleged to be similar to those now before us. Luedecke v. Des Moines Cabinet Co., 140 Iowa 223, 227, 118 N.W. 456, 457 (1908); Andrew v. American Savings Bank and Trust Company of Davenport, 219 Iowa, 1059, 1061, 258 N.W. 921, 922 (1935). What we must decide is whether the facts, which are without material dispute, bring this case within the rule there applied.

As already stated, plaintiffs held a judgment against Malt Village in the amount of $6,894.36 for breach of contract. Malt

Village was insolvent and some of its creditors were attempting to work out a plan to assure payment of their claims. Plaintiffs did not receive notice of, or participate in, the creditors' meetings.

Eventually a plan was adopted by Malt Village's only secured creditor—Marco Finance Company—and general creditors holding unpaid claims amounting to $145,000.00. Marco Finance Company had earlier secured a default judgment of $263,943.95 against Malt Village, but had not taken any steps to enforce it. The plan approved by the participating creditors provided for the formation of Village Enterprises to take over all of the assets of Malt Village. The new corporation agreed to use these assets in the operation of the franchise business and to discharge, if possible, the indebtedness of Malt Village. The general creditors were issued non-interest bearing debenture bonds which were to expire in seven years. They were to be paid from 50 percent of the earnings of Village Enterprises after taxes. Marco Finance Company agreed to forego recourse to its security while the plan was in operation. Plaintiffs were offered debenture bonds on the same basis as the participating creditors, but refused to accept them.

At the time Village Enterprises was organized and took over all of Malt Village assets, Malt Village was insolvent. This, of course, was known to all participating persons since it was the reason the new corporation was organized. Malt Village received no consideration for the assignment of its assets. It is true Village Enterprises agreed to use them to liquidate Malt Village's debts under the creditor's plan; but this property would have been subject to such obligation in any event with or without the assignment. The effect of the assignment was to accomplish the virtual dissolution of Malt Village. The arrangement was solely for the benefit of creditors. It brought no advantage to the defunct corporation.

Instead of participating with other creditors in attempting to work out an arrangement under which Malt Village's debts might be systematically paid, plaintiffs sought to satisfy their judgment by attaching certain property which Village enterprises had obtained under the general assignment of assets. (The property attached was a $15,000.00 judgment which Village Enterprises had obtained on an unliquidated claim assigned to it by Malt Village.) It is this property upon which plaintiffs claim an equitable lien.

The trial court held plaintiffs were entitled to such relief and ordered the proceeds of that judgment to the extent of $6,000.00 applied to payment of plaintiffs' claim. We agree.

Plaintiffs rely strongly, as did the trial court, on our early decision in Luedecke v. Des Moines Cabinet Co., 140 Iowa, 223, 225, 118 N.W. 456, 457 (1908), where we recognized the doctrine of equitable lien under circumstances quite similar to those existing here. There the plaintiff stated the proposition this way:

"Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation, and this without reference to the question of actual fraud."

We state parenthetically that there, as here, no actual fraud was shown.

In Luedecke we limited the equitable lien doctrine to those instances in which the transfer of assets was not made in the regular course of business to a good-faith holder. We said: "We do not recognize the trust-fund doctrine [upon which a claim of equitable lien depends] to the extent that it has obtained in some of the courts; but are of the opinion that corporate creditors are entitled in equity to the payment of their debts before any distribu-

tion of corporate property is made among the stockholders, *and recognize the right of a creditor of a corporation to follow its assets or property into the hands of anyone who is not a good-faith holder in the ordinary course of business*". (Emphasis supplied.)

Our later case of Andrew v. American Savings Bank and Trust Company of Davenport, 219 Iowa 1059, 1061, 258 N.W. 921, 922 (1935) reiterates the Luedecke principles and also reviews a number of cases considering equitable liens both before and after that decision. Some of these allowed relief and some denied it, depending on the facts peculiar to each. However, we understand all of them to recognize the rule as stated in the Luedecke case. See also State v. Simmer Oil Co., 231 Iowa 1041, 1044, 2 N.W.2d 760, 762 (1942). It is clear beyond serious argument that Village Enterprises was not a good-faith purchaser in the ordinary course of business when it took a general assignment of assets from the insolvent Malt Village corporation.

However desirable that course may have appeared to most of the creditors, plaintiffs were not obligated to go along with it; nor, because of their refusal to do so, may they be deprived of the means to enforce their claim by a transfer—not made in the ordinary course of business to a good-faith purchaser—which puts the corporate assets beyond their reach.

The trial court properly imposed an equitable lien on the attached property. We affirm the judgment.

Affirmed.